IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

WILLIAM H. PRAY,

    Plaintiff,

vs.                                          CASE NO. 5:04CV110-SPM/AK

JENNIFER BROWN,
et al,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this cause of action pursuant to 42 U.S.C. §1983 alleging that the Defendants violated his constitutional rights with regard to a disciplinary report he received. (Doc. 1). Defendants have filed their special report (doc. 33), which has been construed as a motion for summary judgment (doc. 34), and Plaintiff has responded. (Doc. 37). As explained below, it is respectfully recommended that Defendant's motion for summary judgment (doc. 34) be granted, and this cause be dismissed for failure to state a claim upon which relief may be granted and other good cause.

I.        **Allegations of the complaint (doc. 1)**

Plaintiff claims that on December 28, 2003, he was visited by two friends at Gulf Correctional Institution, after which he was accused of receiving contraband (a watch). He claims that he had a disciplinary hearing on January 4, 2004, but was not allowed witness statements from inmates who could attest that he had the watch before the visit, he was not allowed to testify or explain about the watch at the hearing, was not allowed to present evidence such as the inmate log that would show he had the watch prior to this visit, or show a picture that established him wearing the watch prior to this visit.  He alleges that he was found guilty and given 60 days in confinement and loss of all gain time.  His visits with Mr. Jacobs and Ms. Heflin were also suspended.

Plaintiff claims that these actions were taken in retaliation for him filing previous grievances in violation of the First Amendment; that his illegal confinement resulting from the disciplinary hearing violated the Eighth Amendment; that the procedural defects in the disciplinary hearing violated his due process rights under the Fifth and Fourteenth Amendments; that his equal protection rights were violated with regard to the disciplinary proceeding; and that regulations were not followed with regard to the suspension of his visitation.  Specifically, his due process objections are that he was denied an impartial hearing because he was denied evidence, such as witness statements and the right to explain his side of the story; the disciplinary team was racially motivated to find him guilty; and there was no investigation prior to the hearing or on appeal.

Plaintiff seeks $5,000,000.00 from each defendant.

**No. 5:04cv110-spm/ak**

Plaintiff grieved this to the Warden, who found insufficient information to warrant a dismissal of the disciplinary report.

He appealed this, which was also denied on the grounds:

It is clear that this is a brand new watch.  It is also clear that your DC# and name was scratched into the back of the watch by the needle you had taped to the back of it.  The picture does not clearly show anything.  The writing on the back of the watch shows that the watch was made late in 2003 per Armitron and is one of their latest models.  Therefore there is no way this watch could have been on your property sheet back on October 9, 2001.

## II.    Standard of Review

A district court should grant summary judgment when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." Nolen v. Boca Raton Community Hospital, Inc., 373 F.3d 1151, 1154 (11th Cr. 2004), *citing* Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).  All issues of material fact should be resolved in favor of the Plaintiff or non-moving party before the Court determines the legal question of whether the defendant is entitled to judgment as a matter of law under that version of the facts. Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003); Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002).   The Plaintiff has the burden to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  Celotex, 477 U.S. at 322-23.  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  There must be such evidence that a jury could reasonably return a verdict

for the party bearing the burden of proof.  Anderson v. Liberty Lobby, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).  "For factual issues to be considered genuine, they must have a real basis in the record."  Mize v. Jefferson City Board of Education, 93 F.3d 739, 742 (11th Cir. 1996).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

While a moving party is not required to support his motion for summary judgment with affidavits, Celotex, supra at 323, the facts stated in uncontradicted affidavits or other evidentiary materials must be accepted as true for purposes of summary judgment.  Gauck v. Meleski, 346 F.2d 433, 436 (5th Cir. 1965).

### III.     Defendants Rule 56(e) evidence (doc. 33)

   a)     Affidavit of Defendant Clifford Millergren (Exhibit B)

Millergren attests that he has been a correctional officer since April 1999, and is familiar with Plaintiff and the incident complained about.  He described how visitation is conducted, which is that inmates are strip searched and their property listed prior to and

**No. 5:04cv110-spm/ak**

after visitation. Millergren became very familiar with Plaintiff and his possessions because Plaintiff used the "visiting park" frequently and his property, including his watch, was frequently examined and listed. Millergren knew Plaintiff's watch to be a black and silver Armitron, scratched, and approximately 5 to 10 years old, and which was the only Armitron watch on the compound. Millergren strip searched Plaintiff on December 28, 2003, and listed his property, which included the same Armitron he had been wearing for over 2 years. When Plaintiff returned from visitation, Millergren noticed immediately that he had a new watch, a black, silver and blue Armitron, that was brand new, with no scratches and no indentations on the band like the old one. He also found taped on the back of the watch a sewing needle, obviously used to scratch his name and DC number on the back. Millergren stated that DOC uses standard engraving tools to put an inmate's DOC number on property, and it does not scratch their names on the property. Plaintiff claimed that he had brought the watch with him into the system and objected to its confiscation. Millergren wrote a disciplinary report on the incident because the new watch was contraband, not for any retaliatory purposes. In fact, Millergren stated that he was unaware of any grievances on file when the incident occurred.

    b) <u>Disciplinary Report (Exhibit C)</u>

Millergren prepared the report dated December 28, 2003, which states:

> On 12-28-03 at approximately 2:10 p.m. while assigned as security officer in the visitation park, I was strip searching inmate Pray, William DC #091971 when I observed the wrist watch Inmate Pray was wearing was different from the watch he entered with. When Inmate Pray entered he was wearing an older black and silver Armitron watch. When Inmate Pray attempted to exit the visitation park he was wearing a new black, silver,

**No. 5:04cv110-spm/ak**

and blue Armitron watch.  There was also a straight pin wrapped in white
and yellow string that appeared to be used to scratch his DC number on
the back of the new watch and was taped to the back of the watch.
Inmate Pray was placed in administrative confinement where he will
remain pending disposition of this report for (3-13) introduction of
contraband into a secure facility.

A hearing was set for December 29, 2003, at 10:15 a.m.  The Investigative Report was prepared by Antonio Hudson.  It shows that several persons were interviewed and pictures were taken of the watch with the needle attached to the back, as well as the writing scratched on the back.  Officers R. Flanagan, B. Fields and Inmates James Lyons, Marcus Johnson, and Bryant Blanton were interviewed.  A Witness Disposition Form was signed by Plaintiff which shows that he had three inmate witnesses (named above) and Officers Flanagan and Fields were listed.  Plaintiff completed and signed a statement on December 29, 2003, where he explained that the "new" watch was actually the same watch he had, and which had been logged in by Officer Flanagan the day before.  He also explained that the sewing needle had been used to sew buttons on his pants, and he had taped it on his watch so as not to lose it, but anyone could see it was not strong enough to scratch his number on the back of the watch so deeply.

Officer Flanagan stated that he observed Plaintiff on December 27, 2003, to be wearing an older Armitron watch.  Officer Fields stated that he had no knowledge of the incident.  Inmate Marcus Johnson stated that Plaintiff "had a new watch, the same watch he came here to Gulf CI with."  Inmate James Lyons stated, "he has had this watch for some time now.  I notice this watch when he came here, I don't know why it has become a problem.  But, he came with it.  So, thank you for allowing me to make this state we [sic] for such a good person."  Inmate Bryant Blanton stated that "[w]hen I

**No. 5:04cv110-spm/ak**

was in H-2 Inmate Prey had a Black, blue, & silver watch that look new. It was also the same watch I seen him with in F dorm when we were in there together." The Hearing Information form stated that all witness statements and evidence was reviewed and considered, Plaintiff was present and pled not guilty. The Disciplinary Team, comprised of Defendants Jennifer L. Brown and Heather Hewitt found Plaintiff guilty and sentenced him to sixty (60) days disciplinary confinement.

  c) <u>Affidavit of Defendant Jennifer Brown (Exhibit D)</u>

Defendant Brown attests that she was at the hearing and saw for herself that the watch confiscated appeared brand new. She noted that it had no scratches or other visible signs of normal wear and tear, and the band had no line or indentation where it would have been folded back and secured in the buckle. She also noted that the back of it had been scratched with Plaintiff's name and DOC number, and with a tool other than an engraving tool. She considered Plaintiff's statement and his witness statements, but found the visible evidence, as well as Millergren's statement that he knew the watch and knew the one he had on was different, to be overwhelmingly against Plaintiff's continued assertion that it was the same watch he had always had.

Brown did not curse during the hearing, but recalls Plaintiff becoming very upset when he was warned that a guilty finding would result in Ms. Heflin being denied visitation. She does not recall anyone calling Ms. Heflin a liar, although her continued abuse of visitation rules was brought up as grounds for her visitation privileges being permanently suspended.

**No. 5:04cv110-spm/ak**

Plaintiff received 60 days in disciplinary confinement, but no gain time was forfeited because Plaintiff had no gain time. There was no discussion of his grievance filing nor was his race a factor, the finding of guilty was based on the evidence presented.

The photographs attached to her affidavit show a new, barely worn watch, with something appearing to be the size and shape of a needle wrapped in thread attached by tape to the band.

    d)    <u>Affidavit of Vera White (Exhibit E)</u>

Ms. White is the property sergeant who was asked to review all of Plaintiff's property lists since he arrived at Gulf CI in 2001. She found three forms mentioning his watch, and one showed that he had an Armitron digital watch when he arrived on October 9, 2001. She noted that the watch he presented with on December 28, 2003, could not possibly be the same watch because it looked brand new, had no indentation marks where he had been wearing it, and it looked like it had never been worn. Further, she knows that all property is engraved with a standard engraving tool by DOC, and the markings on the back of the watch in question were scratched onto the back. She called Armitron to inquire if the particular model was made in 2001, and discovered that based on the model number and description of the colors on the face of the watch, the Armitron representative stated that the model was the company's newest model and had just been released in 2003.

    e)    <u>Affidavit of Ron Rountree (Exhibit F)</u>

**No. 5:04cv110-spm/ak**

Mr. Rountree investigated Plaintiff's allegations of misconduct with regard to the issuance of the disciplinary report and hearing and stated that after Plaintiff filed a grievance alleging retaliation and the filing of a false report, Ms. Heflin mailed a letter to the warden with a picture of someone's hand wearing a watch dated December 13, 2003, which she purported was Plaintiff's hand.  Mr. Rountree said the picture was too blurry to see the watch clearly, and it was impossible to determine whose hand it was.  Mr. Rountree interviewed Plaintiff who told him the watch was not the watch he came into the system with, he had purchased it from another inmate in August and worn it every day since, but he would not identify the inmate he bought it from.  Plaintiff also told him that the picture Ms. Helfin had was his hand and had been taken at the visiting park on December 13, 2003, thereby proving he already had the watch and she did not bring it to him.  Mr. Rountree also examined the watch and found it to be new and to have been scratched on the back with Plaintiff's name and DOC number, which was not the practice used by DOC for marking inmate jewelry.  He also called the Armitron Company and was told the model was new and had been shipped for distribution sometime in August of 2003.  During the time of his investigation phone calls between Plaintiff and Ms. Heflin were monitored and a discussion about bringing tennis shoes into the visiting park was overheard.  Inmates must purchase tennis shoes from an approved source, so Ms. Heflin was conspiring to bring contraband into the facility.  Ms. Heflin's visiting privileges had been suspended previously for using false information to obtain visitation, attempting to enter the facility using an alias, and she had dialed a third party for Plaintiff during a phone call in August 2002.  After the watch incident, Ms.

**No. 5:04cv110-spm/ak**

Heflin's visitation privileges were suspended for one year. After this suspension, Ms. Heflin was involved in another incident where she attempted to vist Plaintiff with Ms. Tomlin, but was refused when she would not produce identification resulting in a disorderly incident where she and Ms. Tomlin used profanity against staff. A K-9 unit "hit" on Ms. Heflin's car in the parking lot while the incident was ongoing and a pipe was found in the vehicle. This incident resulted in Ms. Tomlin's visitation privileges being suspended, but Ms. Heflin was a key player in the problems encountered that day.

Also attached to the affidavit are the grievances Plaintiff referred to as creating the retaliatory environment which prompted the Defendants to fabricate the disciplinary report about the watch. On December 9, 2003, he had filed a grievance reporting that Captain Patrick was bringing drugs, knives, and jewelry into the facility, which Mr. Rountree attests was investigated by the Office of Inspector General without result because Plaintiff provided insufficient information. None of the Defendants were named in the grievance against Patrick.

### IV.     Plaintiff's Rule 56(e) evidence (doc. 37)

a)     <u>Disciplinary Report</u>

Plaintiff has submitted a copy of the same disciplinary report prepared by Defendand Millergren, which he claims shows that no one actually saw him receive the watch from Ms. Heflin.

b)     <u>Grievances</u>

Plaintiff has submitted a copy of his grievances to show he exhausted administrative remedies. His failure to exhaust is **not** an issue in this lawsuit.

**No. 5:04cv110-spm/ak**

    c)    <u>Affidavits</u>

He has submitted an affidavit of Marcus Johnson, which states:

I inmate Marcus Johnson 117328 witness within the month of December 2003 I saw William Pray with his watch the black, blue and gray on it, he been wearing it since I been at Gulf CI that was on the picture he showed me with him & his wife on his birthday Dec. 13-03 this is a fact that this very watch was on William Pray wrist the whole month of Dec '03 I know of.

    Inmate James May attests:

My name is James O. May #A-376119 I am a witness that in December 2003 I did see William Pray with a black, blue and gray watch. I remember him having this watch because he wears it all the time and has ask me to hold it when he plays ball.

    Inmate Leo Seed states:

While in DC confinement in February 2004 my cellmate William Pray was approached by Captain Bellellis and was told that he was not liked by any of his officers and also was told by Captain Bellellis that the disciplinary team did not like him either. And Captain Bellellis also said to William Pray "you are a thorn in our side."

    d)    <u>Instruction Manual for Armitron M591</u>

Plaintiff claims that this proves he had the watch.

    e)    <u>Photograph</u>

Plaintiff submitted a photograph of him and his wife, which shows he had a watch on, but the watch is not clear and there is no proof of the date of the picture.

**V.    Analysis**

**No. 5:04cv110-spm/ak**

      a)    <u>Retaliation</u>

It is well established that a prisoner's constitutional rights are violated if adverse action is taken against him in retaliation for the exercise of his First Amendment rights. <u>See</u> <u>Farrow v. West</u>, 320 F.3d 1235, 1248 (11th Cir. 2003); <u>Mitchell v. Farcass</u>, 112 F.3d 1483, 1490 (11th Cir. 1997); <u>Wright v. Newsome</u>, 795 F.2d 964 968 (11th Cir. 1986); <u>Adams v. James</u>, 784 F.2d 1077, 1080 (11th Cir. 1986). In the prison setting "[t]he state may not burden [First Amendment rights] with practices that are not reasonably related to legitimate penological objectives . . . nor act with the intent of chilling that First Amendment right." <u>Harris v. Ostrout</u>, 65 F.3d 912, 916 (11th Cir. 1995) (citing <u>Turner v. Safley</u>, 482 U.S. 78, 85-89, 107 S.Ct. 2254, 2260-61, 96 L.Ed.2d 64 (1987), and <u>Wildberger v. Bracknell</u>, 869 F.2d 1467, 1468 (11th Cir. 1989)).

In general, a prisoner may establish retaliation by "demonstrating that the prison official's actions were `the result of his having filed a grievance concerning the conditions of his imprisonment.'" <u>Farrow</u>, 320 F.3d at 1248 (citing <u>Wildberger</u>, 869 F.2d at 1468). The prisoner must, however, come forward with more than "general attacks" upon a defendant's motivations and must produce "affirmative evidence" of retaliation from which a jury could find that plaintiff had carried his burden of proving the requisite motive. <u>Crawford-El v. Britton</u>, 523 U.S. 574, 600, 118 S.Ct. 1584, 1598, 140 L.Ed.2d 759 (1998) (citations omitted).[1] A prisoner does not automatically cast doubt upon an

---

[1] Mr. Seed's statement that he overheard Captain Bellellis say that Plaintiff was not well liked by anyone, including the disciplinary team, is not supportive of Plaintiff's claim of retaliation because it fails to link even their dislike to his filing of a grievance. It is Plaintiff's burden to show motive, the Court will not assume retaliation is to follow whenever an inmate files a grievance. <u>See</u>  <u>See</u> <u>Adams</u>, 784 F.2d at 1082;and <u>Crawford-El</u>, 523 U.S. at 580-86.

**No. 5:04cv110-spm/ak**

institutional decision, nor is the decision "subject to exhaustive challenge," solely because he was engaged in a First Amendment right. Adams, 784 F.2d at 1082; Adams v. James, 797 F.Supp. 940, 949 (M.D. Fla. 1992). Even though prison officials do not have the authority to prohibit inmates from filing grievances it does not follow that every time an inmate files a grievance the act of doing so renders the exercise of prison authority suspect. See Adams, 784 F.2d at 1082. Indeed, while mindful that a plaintiff may not be held to a heightened burden of proof, see Crawford-El, 523 U.S. at 580-86 (holding that in retaliation claim prisoner could not be required to show "clear and convincing" evidence of defendant's unconstitutional motives), courts should approach prisoner claims of retaliation "with skepticism and particular care" due to the "near inevitability" that prisoners will take exception with the decisions of prison officials and "the ease with which claims of retaliation may be fabricated." Dawes v. Walker, 239 F.3d 489, 491 (2nd Cir. 2001), impliedly overruled in part on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

Plaintiff has wholly failed to link his protected First Amendment activity, *i.e.* the filing of the grievance against Captain Patrick to the actions of the named Defendants. There is no evidence that the Defendants knew about the grievance, and indeed, they specifically deny any such knowledge. Further, the overwhelming evidence which supported the finding of contraband by the named Defendants, also supports a finding that they would have taken the same action regardless of his filing a grievance against Captain Patrick. See Thaddeus-X v. Blatter, 175 F.3d 378, 399 (6th Cir. 1999) (defendant entitled to summary judgment if he can show that he would have taken same

**No. 5:04cv110-spm/ak**

action in absence of protected speech).  Thus, Defendants are entitled to summary judgment on this claim.

      b)    <u>Due Process</u>

The Eleventh Circuit has interpreted <u>Edwards v. Balisok</u>, 520 U.S. 641, 117 S.Ct 1584, 137 L.Ed.2d 906 (1997) to foreclose all claims challenging a disciplinary proceeding unless they are "purely procedural, as in <u>Wolff</u>...."  <u>Harden v. Pataki</u>, 320 F.3d 1289, 1295 n.9 (11th Cir. 2003).

The procedural requirements for a disciplinary hearing are three-fold: (1) advance written notice; (2) a written statement of the reasons for the disciplinary action taken; and (3) the opportunity to call witnesses and present evidence.  <u>Wolff v. McDonnell</u>, 418 U.S. at 563-566; <u>Young v. Jones</u>, 37 F.3d 1457, 1459-60 (11th Cir. 1994); <u>Bass v. Perrin</u>, 170 F.3d 1312, 1318 (11th Cir. 1999).

Plaintiff alleges that he was not allowed to explain himself at the hearing, was not allowed to present witness statements from persons who knew he had the watch prior to its confiscation, and no investigation was done.  The written materials provided by the Defendants clearly refute all these allegations.  Plaintiff was given advance notice, which he signed, and every witness he listed on the form provided written statements, which the team considered, and he appeared at the hearing and his own written statement was included in the submission to the team.  An investigation was conducted by an impartial corrections officer, who interviewed the officers involved and witnesses and obtained all their statements.

**No. 5:04cv110-spm/ak**

Plaintiff initially told the officer that he brought the watch with him to the institution, but later changed this story to state that he bought the watch from another inmate. It is <u>more</u> than significant that he did not provide the affidavit of this person or identify him as a witness before the hearing. The witness statements, which are materially the same as the affidavits he has proffered in response to summary judgment, are from inmates who claim they saw him with this watch.[2] These affidavits do not sufficiently support Plaintiff's version of the facts to create a genuine dispute. For instance, Inmate Johnson states Plaintiff has had this watch since he came to Gulf CI, but even Plaintiff has abandoned that story. Then, Inmate May states that he remembers Plaintiff's watch as being black, blue and gray because he wears it all the time, but the picture of the watch confiscated on December 28, 2003, clearly shows that it has not been worn often, if at all. Likewise, the statements of Inmates Lyons and Blanton that Plaintiff has had the watch for some time is contradicted by the pictures of it, as well as the facts established by both Vera White and Ron Rountree who discovered upon inquiry with the manufacturer that the watch could not have been brought into the institution in 2001, and was not even distributed until August 2003. Both White and Rountree attested further that the scratching on the back of the watch is not done by an engraving tool, which is the manner in which DOC marks jewelry owned by inmates. Finally, the pictures Plaintiff contends support that he was wearing the watch at an earlier time do not provide a clear enough view of the watch in question,

---

[2] At the hearing he listed Marcus Johnson, James Lyons, and Bryant Blanton as witnesses, and with his response he submitted affidavits from Marcus Johnson, James May, and Leo Seed.

**No. 5:04cv110-spm/ak**

and there is no evidence of the time the pictures were taken, only his contention and that of Ms. Heflin, and their credibility is in serious question. Defendants should be granted summary judgment on this claim, as well.

      c) <u>Equal Protection</u>

The Equal Protection Clause does not require absolute equality. <u>Ross v. Moffitt</u>, 417 U.S. 600, 612 (1974). Government action may have a disparate impact upon persons similarly situated, but it is not unconstitutional absent a discriminatory intent. <u>Washington v. Davis</u>, 426 U.S. 229, 239 (1976); <u>Personnel Administrator of Massachusetts v. Feeney</u>, 442 U.S. 256, 272 (1979). Thus, to prevail on an equal protection claim, a prisoner must demonstrate that he is similarly situated to other inmates who were treated more favorably, and that his discriminatory treatment was based on some constitutionally protected interest. <u>Jones v. Ray</u>, 279 f.3d 944, 947 (11th Cir. 2001). Plaintiff must set forth facts which show that the Defendants discriminated against him on the basis of "race, religion, national origin, poverty or some other constitutionally protected interest." <u>Damiano v. Florida Parole and Probation Comm.</u>, 785 F.2d 929, 932-33 (11th Cir. 1986).

Plaintiff has alleged no specific facts to support a discriminatory intent behind the actions taken by the disciplinary team. He does not even allege that any specific racially hostile comments were made by the team, just that they accused him and Ms. Heflin of lying. Indeed, there was considerable evidence before the team supporting

**No. 5:04cv110-spm/ak**

their lack of truthfulness.  However, even if this were true, which the team members do not recall, such statements do not raise any protected interest.  Finally, Plaintiff does not make any type of showing that other persons similarly situated, e.g. white inmates caught with contraband, were treated differently from him.  Defendants are entitled to summary judgment on this issue, also.

      d)     Disciplinary confinement

There is no issue with regard to Plaintiff being given 60 days in disciplinary confinement.  These claims have been specifically foreclosed by the United States Supreme Court, which has expressly held that a state prisoner who is subjected to disciplinary punishment that is within the prisoner's expected condition of confinement cannot show deprivation of a protected liberty interest.  Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).  The Eleventh Circuit, too, has held that two months administrative confinement is not a deprivation of a constitutionally protected liberty interest.  Rogers v. Singletary, 142 F.3d 1252, 1253 (11th Cir. 1998).  See also Al-Amin v. Donald, 2006 WL 197191 (11th Cir.) (30 months administrative confinement not violative of due process where conditions are substantially similar to conditions of general population); see Fla. Admin. Code §33-601-314 (maximum disciplinary confinement is sixty (60) days).   Only those disciplinary actions which pose an "atypical and significant hardship in relation to the ordinary incidents of prison life" may constitute a constitutional deprivation."  Sandin, 515 U.S. at 484.  Defendants, therefore, are also entitled to summary judgment on this claim.

      e)     Visitation

**No. 5:04cv110-spm/ak**

The Eleventh Circuit has established that "inmates do not have an absolute right to visitation, such privileges being subject to the prison authorities' discretion provided that the visitation policies meet legitimate penological objectives." Caraballo-Sandoval v. Honsted, 35 F.3d 521, 525 (11th Cir. 1994). A review of the material submitted by the Defendants concerning the suspension of Ms. Heflin's privileges make clear that she violated a number of regulations with equally clear penological objectives.[3] The prison must identify persons coming into the facility and someone who fails to clearly identify themselves or uses alias' to bypass these regulations should not be allowed entry. Further, the prison's need to ban disorderly behavior and drug possession requires no explanation. Ms. Heflin had continued to violate prison regulations resulting in several suspensions, such that her permanent ban from visitation was inevitable and foreseeable.

As an additional note, the Clerk of Court should be directed to specifically note on the docket that this action shall constitute a "strike" within the meaning of 28 U.S.C. §1915(g). Plaintiff misrepresented the facts pertaining to the underlying claim, as well as with regard to the consequences resulting from the disciplinary action in that he did not lose gain time, and he did so with the knowledge that there were pictures establishing the fact that his watch was new, that he signed forms that would establish that witness statements, as well as his own, were included in the investigation of the

---

[3] Plaintiff mentioned the suspension of privileges for Mr. Jacobs in his complaint, but provides no further details or argument in support of this aspect of his claim. Given that this person was with Ms. Heflin when contraband was brought into the facility, it is the opinion of the undersigned that some adverse affect upon Jacob's privileges would be justified. However, since Plaintiff has not offered any facts about Jacob's suspension, the Court should deem the issue to concern Heflin only.

**No. 5:04cv110-spm/ak**

incident.  Plaintiff was also aware that Ms. Heflin has been previously suspended from visitation for several infractions and that this information would come to the Court's attention.  These facts support a finding that his claims were frivolous and malicious.  The undersigned has in a separate case, <u>Pray v. Walmart</u>, Case No. 1:06CV34-MMP/AK, recommended that the dismissal of that case, too, be deemed a strike because it was brought frivolously.  (<u>See</u> Doc. 7).

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's Motion for Summary Judgment (doc.  34) be **GRANTED,** and this cause be **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(i) and (ii), for being frivolous and malicious, and that the order adopting this report and recommendation direct the clerk of court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and shall constitute a second "strike."

**IN CHAMBERS** at Gainesville, Florida, this **28th**   Day of April, 2006.


                              s/ A. KORNBLUM
                              **ALLAN KORNBLUM**
                              **UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after**

**No. 5:04cv110-spm/ak**

**being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 5:04cv110-spm/ak**